**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph T. Melczer III,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Unum Life Insurance Company of America; Long-Term Disability Plan of Snell & Wilmer, L.L.P.,<br><br>　　　　Defendants. | No. CV07-2560-PHX-MHM<br><br>**ORDER** |

Currently pending before the Court is Defendant's Motion for Summary Judgment (Dkt.# 17) and Plaintiff's Cross-Motion for Summary Judgment (Dkt.#25).

**I.     Factual Background**

The following facts are undisputed: Joseph T. Melczer was a partner at the law firm of Snell & Wilmer in Phoenix. As a partner in the firm, he was entitled to participate in Snell & Wilmer's Employee Welfare Benefit Plan with Unum Life Insurance Company of North America. (Dkt.#s 17 at 1, 25 at 2) Under the policy, he was entitled to monthly benefits if he could not perform each of the material duties of his regular occupation as a result of an injury or sickness. (Dkt.#s 17 at 1, 25 at 2) He became ill with bipolar disorder and severe chronic dermatitis. (Dkt.# 24, ¶¶ 29, 30; # 38 ¶¶ 29, 30) He made a claim under the policy and was apparently paid benefits for 24 months. (Dkt.# 24, ¶ 33; # 38 ¶ 33) However, the

1  policy limited mental illness claims to a period of 24 months; at the end of this period, Unum
2  ceased to pay benefits to Mr. Melczer.  (Dkt.# 24, ¶ 33; #38 ¶ 33)  He was given notice of
3  this fact three times (on February 28, 2003, March 5, 2003, and November 11, 2003).
4  (Dkt.#24, ¶¶ 37, 38, 40; #38 ¶¶ 37, 38, 40)  He was also advised in the November 11, 2003
5  letter that his benefits would accordingly expire at the end of the month and that he had
6  ninety days (until February 11, 2004) in which to "appeal" to Unum from Unum's decision
7  to terminate benefits.  (Dkt.# 24 ¶ 40; # 38 ¶ 40)

8  However, he did not make any such appeal.  (Dkt.#24 ¶ 41; #38 ¶ 41)  Plaintiff
9  explains that the reason that he did not appeal was because he "was still disabled and in fact
10 heavily medicated for both bipolar disorder and atopical dermatitis in late 2003 and early
11 2004."  (Dkt.# 24 ¶ 41)  Defendants respond by stating that they "are without knowledge or
12 information sufficient to form a belief as to the truth"of these allegations but maintain that
13 these allegations are not material to the pending motions."  (Dkt.# 38 ¶ 41)

14 In November 2004, Unum entered into a Regulatory Settlement Agreement ("RSA")
15 with state law enforcement agencies throughout the United States (including the Arizona
16 Department of Insurance) and the United States Department of Labor.  (Dkt. # 24 ¶ 42; # 18-
17 8 [Exh. H])  The RSA resulted from a series of lawsuits filed against Unum by various law
18 enforcement agencies for engaging in unfair claims practices in reference to policy holders
19 who were denied disability benefits.  (Dkt. # 24 ¶ 43; # 18-8 [Exh. H] ¶ 2)  Under the RSA,
20 Unum agreed to reassess long-term disability claims that it denied or otherwise terminated
21 between January 1, 2000 and November 2004.  (Dkt. # 24 ¶ 42; # 18-8 [Exh. H] at 22)  Mr.
22 Melczer's claim was subject to this agreement because his disability benefits had been
23 terminated in November 2003.  (Dkt.# 24 ¶ 45; # 38 ¶ 45)  Mr. Melczer retained counsel and
24 submitted extensive medical evidence to the effect that bipolar disorder cannot be accurately
25 characterized as a "mental"as opposed to a "physical" illness given that the disease has
26 biological and genetic roots.  (Dkt. #24 ¶¶ 47, 48; #38 ¶¶ 47, 48)  He also submitted evidence
27 from his dermatologist and psychologist to the effect that his chronic dermatitis would
28 qualify as a physical disability that would prevent him practicing law regardless of the

bipolar disorder. (Dkt. # 24 ¶ 47, 48; # 38 ¶¶ 47, 48) Unum affirmed its original decision to terminate Mr. Melczer's benefits without subjecting him to an independent medical examination. (Dkt. # 24 ¶¶ 49, 50; # 38 ¶¶ 49, 50)

## II. Discussion

Defendants move for summary judgment arguing that Mr. Melczer's failure to exhaust administrative remedies bars any claim for disability benefits that he might have. (Dkt.# 17) Plaintiff argues that the appeal process would have been futile in this case, creating an exception to the exhaustion doctrine. (Dkt. #25) Plaintiff also "cross-moves for summary judgment on the issue of whether or not he was required to exhaust administrative remedies regarding Defendants termination of his disability benefits"; however this "cross motion" is more properly considered a responsive argument to Defendants summary judgment motion as it does not provide any basis for granting judgment in Plaintiffs favor even it is adopted; rather, it merely provides a basis for rejecting Defendant's motion for summary judgment.

### A. The Exhaustion Doctrine

The general rule in ERISA claims is that "a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court."[1] *Diaz v. United Agr. Employee Welfare Ben. Plan and Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995) (citing *Amato v. Bernard*, 618 F.2d 559, 566-68 (9th Cir. 1980)). This requirement serves the policy goals of "the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise." *Id.* By not appealing Unum's decision, Mr. Melczer failed to comply with Unum's internal review procedures and hence did not exhaust the available administrative remedies. Thus, unless one of the recognized exceptions to exhaustion apply (inadequacy and futility), Defendants' motion should be granted.

---

[1] "ERISA," of course, refers to the Employment Retirement Income Security Act of 1974.

### B. The Futility Exception

"The futility exception [to the exhaustion requirement] . . . is designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail." *Diaz*, 50 F.3d at 1484 -85. Unum cites to a number of cases from other circuits to the effect that the futility exception should apply only when it is *certain* that an adverse ruling will result and that a high likelihood of an adverse ruling is insufficient. *E.g., Communications Workers of America v. American Tel. Co.*, 40 F.3d 426, 433 (D.C. Cir. 1994); *Smith v. Blue Cross & Blue Shield United*, 959 F.2d 655, 659 (7th Cir. 1992). However, these cases are not binding on this Court. This Court is bound by the Ninth Circuit, which in *Diaz* explained that the proper standard was "demonstrably doomed to fail." 50 F.3d at 1484.

Mr. Melczer argues that pursuing the appeal was demonstrably "doomed to fail" as is evidenced by Unum's denial of Mr. Melczer's RSA claim. Unum argues that the RSA was not intended to alter the rights between the parties. The RSA by its own terms does not "increase any rights of participants in ERISA-covered plans . . . including any appeal or review rights under the plan." (Dkt.#18-8 [Exh. H] ¶ 13) The RSA further explains that it does not provide any additional rights to those who have "failed to exercise their rights and therefore . . . permitted those rights to lapse." *Id.* However, though the RSA may not itself create new rights, the Defendants have not pointed to any provision of the RSA that limits the use of its procedures as evidence of the manner in which Unum was processing claims. Thus, although the RSA does not itself create a right to litigate without appealing, the RSA procedures may be used as evidence to analyze whether an appeal would have been futile.

Defendants next argue that the RSA procedures and the appeal procedures are very different from each other. However, Mr. Melczer is not arguing that by following the RSA procedure, he somehow satisfied the appeal requirement; instead, he is arguing that the way Unum processed his RSA assessment demonstrates that any appeal he had made would have been futile. Therefore, Defendants' four arguments about how the RSA procedures and the appeal procedures are different from each other are irrelevant. It does not matter that the reassessment procedure was available to even those who had previously appealed their

claims or that those who had already exhausted their remedies were not required to re-exhaust their remedies under the RSA procedure. (Dkt. #17 at 7) It is wholly irrelevant that the RSA process applied to both ERISA and non-ERISA plans. (Dkt. #17 at 7) Nor does it matter that three unpublished district court decisions from Louisiana and Wisconsin and an unpublished decision from the Fifth Circuit (which has since been reversed) apparently limited their review of the merits of a claim to the administrative record that was submitted during the underlying claim process rather considering evidence submitted during the reassessment process. (Dkt.# 17 at 7) This Court is not evaluating the substantive merits of Mr. Melczer's claim; rather, it is evaluating whether an appeal would have been inadequate or futile so as to create an exception to the doctrine of exhaustion and allow Mr. Melczer's claim for disability benefits to survive.

Mr. Melczer points to well-documented instances where Unum's appeal process was found to be inadequate, namely the many investigations that were launched by various state insurance regulators to determine if Unum's disability claim review process "reflected systemic unfair claim settlement practices." (Dkt.# 18-8 [Exh. H] ¶ 2) Under the RSA, Unum apparently agreed to a review process to reassess denied claims, to reform its claim procedures, to accept continuing oversight, and to payment of a $15,000,000 fine. (Dkt.# 18-8 [Exh. H] throughout) At least one law review article has chronicled Unum's pattern of misconduct in mishandling claims. *See*, i.e., John Langbein, *Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA*, 101 Nw.U. L.Rev. 1315 (2007) (which was itself subsequently favorably cited by the United States Supreme Court in *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2348 (2008) and by the Ninth Circuit in *Saffron v. Wells Fargo & Co.*, 522 F.3d 863, 867 (9th Cir. 2008)). The following passage is illustrative:

> Many federal courts have now commented on Unum's aggressive claims denial practices. Published opinions speak of "selective review of the administrative record," "lack of objectivity and an abuse of discretion by UNUM,"misuse of "ambiguous test results," and claims evaluation practices that "defie[d] common sense" and "bordered on outright fraud." In a notable opinion in the district court in Massachusetts, Chief

> Judge Young collected citations to nearly twenty previous cases that he described as "reveal[ing] a disturbing pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics." He faulted Unum for behavior "entirely inconsistent with the company's public responsibilities and with its obligations under the [ERISA-covered disability] Policy" in the particular case.
>
> As complaints, litigation, and media accounts multiplied, several state insurance commission staffs began investigating Unum's claims denial practices. In the view of the Georgia commissioner, Unum had been "looking for every technical legal way to avoid paying a claim." In 2003 and 2004, the Maine, Massachusetts, and Tennessee insurance regulators, acting on behalf of most other states, conducted a coordinated investigation and filed a report that accused Unum of systematic irregularities in obtaining and evaluating medical evidence of disability. Unum agreed to pay a $15 million fine, to reopen several years' worth of denied claims, and to make specified changes in its claims reviewing procedures and its corporate governance.

*Langbein*, *supra* at 1320 (internal citations omitted).

Aside from these general indictments of Unum's typical business practices during this time period, Mr. Melczer points to how his RSA claim was handled as evidence that his appeal would in fact have been futile. For example, he notes that Unum did not subject him to an independent medical exam by a psychiatrist, a psychologist, or a dermatologist. Nor was he subjected to an informal interview by any of the doctors. Unum did not submit his files to be independently reviewed by a psychiatrist, psychologist, or a dermatologist and did not give significant credit to the actual healthcare professionals who either directly examined Mr. Melczer or treated him.

Based on Unum's well-documented history of unfairly denying disability claims throughout the United States,[2] and based on its actual denial of Mr. Melczer's claim during the reassessment process, Mr. Melczer has provided sufficient evidence to persuade this Court that his appeal would have been futile such that the exception to the exhaustion

---

[2] By "well-documented," the Court is referring to the numerous federal court decisions collected in the *Langbein* article and is not relying on the RSA itself as evidence of liability. To do so would run contrary to the intent of the parties to the agreement and create disincentives toward entering into settlement agreements.

1  requirement is applicable. Defendants' Motion for Summary Judgment is therefore denied.
2  Mr. Melczer's Cross-Motion for Summary Judgment on the Issue of His Alleged Failure to
3  Exhaust Administrative Remedies is also denied for the simple reason that his argument is
4  in reality a response to Defendants' summary judgment and does not entitle him to judgment
5  on his claims.  **Accordingly,**

6  **IT IS HEREBY ORDERED** denying Defendants' Motion for Summary Judgment.
7  (Dkt. #17)

8  **IT IS FURTHER ORDERED** denying Plaintiff's Cross-Motion for Summary
9  Judgment. (Dkt. # 25)

10  **IT IS FURTHER ORDERED** setting this matter for a status hearing on April 27 at
11  3:00 PM.

12  DATED this 23rd day of March, 2009.

_____
Mary H. Murgula
United States District Judge